UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT, FLORIDA

FILED BY ___P6___ D.C.

DEC 23 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Maurice J. Jackson,
    Plaintiff,

Case No.: TBA
DIVISION: CIVIL

v.

Ken Scott,
Coach Sidwell,
Scott Walker,
Frank Hepler,
Jane Doe,
John Doe #1,
John Doe #2,
John Doe #3,
John Doe #4,
John Doe # 5,
In Their Individual Capacity, And,
School Board Of Broward County,
Florida High School Athletic Association, et. al,
In Their Individual And Official Capacities,
    Defendants.
_____/

PROVIDED TO DESOTO C.I.
_12-13-2020_ FOR MAILING
INMATE INITIALS
OFFICER INITIALS

**Preliminary Statement:**

This is a civil rights action filed by Maurice J. Jackson, a State prisoner, for damages and declaratory judgment under 42 U.S.C. § 1983, alleging injury to bodily integrity in violation of Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Jurisdiction:**

1.    The Court has jurisdiction over the Plaintiff's claims of violation of Federal Constitutional Rights under 42 U.S.C. §§ 1331(2) and 1343.

**Plaintiff:**

2.    Plaintiff, Maurice J. Jackson (hereinafter referred to as Jackson), is an adult individual and a former student of Several Broward County High School's, and a member of their football programs. At all times pertinent to the facts and circumstances surrounding the instant Complaint, Plaintiff was a minor child and was in the care and custody of the respective Defendants.

**Defendant(s):**

3.      Defendant, Ken Scott (hereinafter referred to as "Scott"), is an adult individual who at all times pertinent hereto was and employee of Defendant School Board Of Broward County located at 600 SE Third Avenue, Fort Lauderdale, Florida 33301, Broward County, Florida, and served as the Head Football Coach at Dillard High School.

4.      Defendant, Sidwell (hereinafter referred to as "Sidwell"), is an adult individual who at all times pertinent hereto was and employee of Defendant School Board Of Broward County, 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served as a Teacher, and Assistant Football - Linebackers Coach at Dillard High School.

5.      Defendant, John Doe #3 (hereinafter referred to as "John Doe #3"), is an adult individual who at all times pertinent hereto was and employee of Defendant School Board Of Broward County, located at 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served as the Principal of Dillard High School, and as the official representative of the FHSAA.

6.      Defendant, John Doe #4 (hereinafter referred to as "John Doe #4"), is an adult individual who at all times pertinent hereto was and employee of Defendant School Board Of Broward County, located at 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served as the Principal of Plantation High School, and as the official representative of the FHSAA.

7.      Defendant, Scott Walker (hereinafter referred to as "Walker"), is an adult individual who at all times pertinent hereto was and employee of Defendant School Board Of Broward County, located 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served as a Teacher, and as Head Football Coach at Plantation High School.

8.      Defendant, Frank Hepler (hereinafter referred to as "Hepler"), is an adult individual who at all times pertinent hereto was and employee of Defendant School Board Of Broward County, located at 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served a Teacher, and Defensive Coordinator and Linebacker Coach at Plantation High School.

9.      Defendant, Jane Doe (hereinafter referred to as "Jane Doe"), is an adult individual who at all times pertinent hereto was and employee of Defendant School Board Of Broward

2

County, located 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served as the Head Athletic Trainer at Plantation High School.

10. Defendant, John Doe #1 (hereinafter referred to as "John Doe #1"). is an adult individual who at all times pertinent hereto was an employee of Defendant School Board Of Broward County, located at 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served a Teacher and as Athletic Director at Dillard High School.

11. Defendant, John Doe #2 (hereinafter referred to as "John Doe #2"). is an adult individual who at all times pertinent hereto was an employee of Defendant School Board Of Broward County, located at 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served as a Teacher and Athletic Director at Plantation High School.

12. Defendant, John Doe #5 (hereinafter referred to as "John Doe #5"). is an adult individual who at all times pertinent hereto was an employee of The School Board Of Broward County located at 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida, and served as Athletic Director for the entire Broward County School District.

13. Defendant, School Board Of Broward County, also known as The Broward County School District (hereinafter referred to as "SBBC") is a public school district, operating and organized at all times pertinent hereto under color of the State law of the State of Florida. The School Board Of Broward County located at 600 SE Third Avenue, Fort Lauderdale, Florida 33301. Broward County, Florida. Moreover, both of the individual High Schools Plantation High and Dillard High are educational institutions which provide secondary education, grades nine through twelve, to students enrolled in Defendant School Board Of Broward County.

14. Defendant, Florida High School Athletic Association (hereinafter referred to as 'FHSAA'), is an athletic association, and non profit corporation, operating and organized at all times pertinent hereto under color of the State law of the State of Florida. The FHSAA office is located at 1801 N.W. 80th Blvd. Gainesville, Florida.

15. All Defendants have acted under the color of State law at all times relevant to this complaint.

16.   Plaintiff re-alleges and incorporates by reference paragraphs [1 thru 14]

**STATEMENT OF FACTS**

17.   The FHSAA is the governing body of interscholastic athletics that oversees over twenty high school sports and hundreds of thousand of students in Florida who participate in interscholastic athletics, including Dillard High School Football players.

18.   Each member school must control its interscholastic athletic programs by FHSAA rules and regulations.

19.   The principal is the official representative of the FSHAA, who represents on behalf of his/her school in its relationships with the FSHAA, and is responsible for the enforcement of FHSAA's bylaws and policies in his/her school.

20.   At all times pertinent hereto, Plaintiff Jackson was a student athlete and a starting member of their respective football programs of Broward County High Schools e.g. Nova High, Plantation High, and Dillard High School, and was under the care, custody, protection and control of the above-named Defendants. This custody was particularly heightened after Plaintiff Jackson sustained his serious and traumatic head injuries in numerous football games, as set forth below.

21.    On or between the years 2018 and 2019, Plaintiff came into knowledge of the medical aspects of chronic traumatic encephalopathy, commonly known as (CTE) by both reading various news periodicals and viewing television. The bases of the Information centered around The Journal of the American Medical Association Article on the CTE report/study ("JAMA Article") by Dr. Ann McKee ("Dr. Mckee"): Published on July 25, 2017. JAMA article detailed the devastating effects of CTE. This JAMA article on the CTE report/ study included semi-pro, college and high school football players.

22.   Plaintiff's posits that he suffers from each of the enumerate symptoms commonly associated with post concussion syndrome.

23.   At the time of the filing of the instant pleading, Plaintiff is forty six (46) years old and will not reach the age of forty-seven (47) until August 7, 2021.

24.   Upon Plaintiff's entrance into the Broward County School System in ninth grade, Plaintiff joined the Nova High School football program and participated in said program throughout his freshman year. After the completion of that freshman year Plaintiff later transferred to Plantation High School for his sophomore year. Plaintiff attended

Plantation High School up until half of his junior year, subsequently completing the end of his junior year and his senior year at Dillard High School which are all situated in the School District of Broward County.

25. At all times relevant hereto, Defendants Walker, Hepler, Scott, John Doe #1, John Doe #2, John Doe #3 John Doe #4, Jane Doe, were serving as Principals, Athletic Directors, and head football coaches, were all responsible for the oversight of their respective schools football programs.

26. During the four years Plaintiff attended High School in Broward County, Plaintiff was an active participant of the respective School's football programs in the instant civil rights action.

27. In fact, Plaintiff was a starting member of the respective football team's football program and played first string on defense and special teams all four years.

28. More specifically, Plaintiff played the Linebacker position on Defense; and was deployed as a wedge buster on the special team units.

29. The nature of the duties and responsibilities of the aforesaid positions require those playing said positions to absorb consistent, violent and sudden contact with their opposition.

30. Often times, this consistent, violent and sudden contact with their opposition occurs by way of a helmet-to-helmet collision. Especially as a starting Linebacker.

31. These helmet-to-helmet collisions can result in injuries including, but not limited to, temporary loss of consciousness, concussions, and traumatic injuries.

32. Plaintiff put in thousands of hours of practice and game time and suffered numerous sub-concussive head traumas, mild traumatic brain injuries, and concussions during his four year high school football career.

33. During practice Plaintiff and his teammates were forced to participate in numerous unsafe drills, particularly the bull in the ring, pit style two on one simulation drills, and live seven on seven scrimmages.

34. The bull in the ring consisted of one player in the middle of a circle of team members, the player in the middle of the circle has to anticipate which player was going to charge and hit him as he spun around clockwise in the center, and where sometimes the assistant coaches would call on multiple players to charge and hit the player in the circle at one

time. Often times, this violent and sudden multiple sided contact occurred by way of multi-sided sudden helmet-to-helmet collisions.

35. The pit style two on one simulation drills consisted of three players lying on their backs. One player is the ball carrier, one is the offensive lineman, and the third player is the tackler. At the sound of the coach(es) whistle, the three players jump to their feet, and the runner, his blocker and the tackler run and ram helmet-to-helmet fighting for positioning, the tackler working to shed the offensive blocker and make the tackle where usually one if not all of them end up hitting the ground. Often times, this violent and sudden contact occurs by way of a helmet-to-helmet collisions doubled up where the tackler has to encounter both offensive players at full contact as they converge upon the defensive tackler in order to simulate a live run play.

36. The live seven on seven scrimmages consisted of fourteen total players with seven on either side of the scrimmage line positioned as defense[1] and offense [2] roles. The object being to simulate a game styled scenario where each player assumes their respective position and their individual game assignments full contact.  Often times, due to the happenstances of one on one open field scenarios violent and sudden multiple sided contact occurred by way of multi-sided sudden helmet-to-helmet collisions.

37. Additionally, studies[3] have linked these traumatic brain injuries to more permanent and severe injuries including, but not limited to, psychiatric disorders; loss of long-term memory; depression; Alzheimer's disease; and; C.T.E., chronic traumatic encephalopathy, a degenerative brain disease.

38. C.T.E. is defined as a permanent change to brain structure caused by repeated blows to the head. C.T.E. is usually caused by repeated minor traumatic brain injuries that "often occur well before development of clinical manifestations," rather than from a single injury.

---

[1] Seven defensive players consisting of 3 linebackers, and 4 defensive backs.

[2] Seven offensive players consisting of a center, tight end, quarterback, wide receiver's and back's depending on the offensive scheme being simulated.

[3] http://jamanetwork.com/journals/jama/article-abstract/2645104

39.   The head injury most commonly associated with helmet-to-helmet collisions is a concussion.4

40.   A concussion is a traumatic injury to the tissues of the brain which often occurs as the result of a violent blow, shaking or spinning.5

41.   Scientists have found that the human brain is concussed at 60 G-forces, and that the common helmet-to-helmet collision on a football field is equivalent to 100 G-forces.

42.   The G-forces generated by a common helmet-to-helmet collision is equivalent to hitting a player on the helmet with a sledge hammer, triggering a cascading series of neurological events which unleashes killer proteins upon the brain, the tangles invading and strangling the mind from the inside out, it's like pouring wet concrete down kitchen pipes, and as it hardens it chokes the brain, leaving him unrecognizable, even to himself. Playing football kills.6

43.   Concussions can cause C.T.E., but a major new study has confirmed that C.T.E. can also result from repeated, seemingly minor blows to the head-not just the big collisions that leave players woozy or unconscious.7

44.   The most prevalent symptoms of a concussion include, but are not limited to, confusion, headache, amnesia, nausea, or vomiting and altered speech.8

45.   Furthermore, sustaining repeated mild traumatic brain injuries without taking sufficient time to recover, significantly increase the risk of developing C.T.E.

46.   Whereas a concussion's symptoms are often sensory and manifest immediately.

47.   C.T.E. can manifest much later, and can be caused by blows, which have no accompanying symptoms.

48.   Due to an increase in sports related head injuries, physicians have developed several means of monitoring both the initial severity of the concussion, as well as the progress of the athlete as he/she recovers from the injury.9

4 "CDC-Injury-TBI-Concussion-Home Page." Centers for Disease Control and Prevention. 25 Aug. 2010. Web. 21 Mar. 2011. http://www.cdc.gov/concussion/.

5 "CDC-Injury-TBI-Concussion-Home Page." Centers for Disease Control and Prevention. 25 Aug. 2010. Web. 21 Mar. 2011. http://www.cdc.gov/concussion/.

6 The Movie Concussion, The story of Dr. Bennett Omalu, Starring Will Smith

7 THE WEEK, Health & Science, February 9, 2018

8 "CDC-Injury-TBI-Concussion-Signs and Symptoms." .Centers for Disease Control and Prevention. 8 Mar. 2010. Web. 21 Mar. 2011. http://www.cdc.gov/concussion/signs_symptoms.html.

49.  The IMPACT (Immediate-Post-Concussion Assessment and Cognitive Testing) Test "is the first, most-widely used, and most scientifically validated computerized concussion evaluation system."

50.  The IMPACT Test "can be administered by an athlete trainer, school nurse, athletic director, team coach, team doctor, or anyone trained in the administration of baseline testing "and" is implemented effectively across high school, collegiate, and professional levels of sport participation.

51.  The IMPACT Test provides a reliable baseline for all participants and also assists athletic trainers, coaches and team doctors in making the important decision of when an athlete may return back to the playing field.[10]

52.  The development of the IMPACT Test has provided those responsible for making the decision of when a player may return back to the field of play with more guidance so as to avoid a subsequent concussion and/or traumatic head injury.[11]

53.  Sometime on or around September 1, 1990, Plaintiff was participating in an FHSAA interscholastic football game against Nova High School, while playing for Plantation High School. This was Plaintiff's newly made rival[12] due to his transferring from one program to the other.

54.  In the initial opening kick-off Plaintiff sustained substantial hit's to his head, thereby causing a "ringing" sensation for several seconds followed by nausea and vomiting once removed to Plaintiffs team sideline.

---

[9] ImPACT Test: Overview and features of Computer-based Concussion Evaluation Program." ImPACT-Testing & Computerized Neurocognitive Assessment Tools. Web. 21 Mar. 2011. <http://impacttest.com/about/background>.

[10] ImPACT Test: Overview and features of Computer-based Concussion Evaluation Program." ImPACT-Testing & Computerized Neurocognitive Assessment Tools. Web. 21 Mar. 2011. <http://impacttest.com/about/background>.

[11] ImPACT Test: Overview and features of Computer-based Concussion Evaluation Program." ImPACT-Testing & Computerized Neurocognitive Assessment Tools. Web. 21 Mar. 2011. <http://impacttest.com/about/background>.

[12] At some point after the game the opposing kick-off team's players Mark Watts and Shaun Farrell informed Jackson that the opening kick-off was designed to be kicked directly to Jackson as did occur wherein Jackson was converged on and violently tackled helmet to helmet by both players at the same time.

55.   During this short period of time, Plaintiff Jackson also sustained a temporary loss of hearing and experienced being considerably disorientated, but managed to gain his composure.

56.   Plaintiff continued to play, as he was not aware that he had sustained a significant head injury.

57.   Plaintiff played the remainder of the game, playing his respective defensive position as a starting linebacker along with his roles on special teams.

58.   Plaintiff recalls being asked multiple times by Defendants Walker and Hepler "if I was ok" after I took the "big hit[13]" on the opening kickoff.

59.   Plaintiff did not respond to the Defendants in words, only by the shaking of his head in the affirmative, as Plaintiff was being shown the game plan and drawn up plays for the remainder of the game in play.

60.   Defendant Hepler then ordered the Plaintiff to "get it together, and return that same intensity back at the Nova Titans Football team in the field of play, now get out there and show'em what you are made off!"

61.   Plaintiff Jackson was not evaluated by any of the team trainer Jane Doe or any member(s) of the coaching staff, despite the fact that this injury occurred in open view of the coach(es), Defendants Walker and Hepler, and anyone observing the game, and during the normal course of play.

62.   At no time pertinent hereto, did Defendants Walker, Hepler, Jane Doe, FHSAA, and/or Defendant School Board Of Broward County instruct their student athletes, including but not limited to Plaintiff, on the causes, symptoms, and dangers of traumatic brain injuries.

63.   At no time pertinent hereto, did Defendants Walker, Hepler, Jane Doe, John Doe #2, John Doe #4, FHSAA, and/or Defendant School Board Of Broward County utilize a form of baseline testing to monitor the progression and/or regression of head injuries sustained by their athletes, including but not limited to Plaintiff.

64.   Defendants Walker, Hepler, Jane Doe, FHSAA, and/or School Board Of Broward County Walker, Hepler, John Doe #2, John Doe #4, Jane Doe, FHSAA, and Defendant 'SBBC'

---

[13] Later after the game Plaintiff's family members remarked that it looked as though Plaintiff had been blown up by both tacklers at the same time and they thought for sure Plaintiff would not be able to get off of the ground much less play another play in that game opening sensational "big hit".

knew or should have known, that traumatic brain injuries, including, but not limited to, concussions, occurred frequently, and that their student athletes should have been educated on these types of injuries.

65.  This deliberate indifference to the health, safety and welfare of their student athletes in failing to educate said student athletes on the causes, symptoms and dangers of traumatic head injuries was the common policy or custom of all Defendants Walker, or Hepler, John Doe #2, John Doe #4, Jane Doe, FHSAA, and/or Defendant School Board Of Broward County.

66.  Additionally, during this same game Plaintiff was approached by Defendant Hepler, on the sideline upon the change of possession, and instructed Plaintiff to "deliver the same intensity and attitude back at the opposition's offensive teams back field as a whole".

67.  More specifically, Defendant Hepler instructed the Plaintiff to "Get Even and play with reckless abandon out there, leave it on the field!" referring to the type of violence with which he wanted Plaintiff to strike the opposition with.

68.  Further, on the next play, Plaintiff engaged in an explosive helmet-to-helmet collision with the opposing center and offensive team members as Plaintiff was instructed to run a "Blitz Play to set the Tempo".

69.  This would mark the Plaintiff's second clear helmet-to-helmet collision of the game.

70.  Once again Plaintiff was visibly injured as he was assisted to his team's sideline with blurred vision and his team and the surrounding side lines cheering and hollering Plaintiffs name in elation.

71.  The Plaintiff was given smelling salts while ice cold towel compresses where administered by Defendant Hepler and the teams Trainer Jane Doe, not two plays after this time Defendant Hepler ordered Plaintiff back in the game by saying "let's go, you are a machine, get back out there and give them hell!"

72.  Plaintiff played the remainder of the game as ordered by Defendants Walker and Hepler.

73.  This unwillingness to remove and/or sit an injured player was practice, custom or policy maintained by the aforesaid Defendants.

74.  Despite their knowledge of, and witnessing Plaintiff's second significant helmet-to-helmet collision. Defendants Walker, Hepler and Jane Doe allowed Plaintiff to remain in

the game, in complete deliberate indifference to the health, safety, and welfare of the Plaintiff.

75.  On or around the first week in September 1991 marked the start of the 91-92 regular season. Plaintiff was participating in a FHSAA interscholastic football season opener against Deerfield Beach High School while Plaintiff was attending Dillard High School this game was televised locally on ESPN2.

76.  During the course of the game Plaintiff was struck in the head by the helmet of an opposing player, while attempting to tackle the opposing teams running back. Plaintiff had experienced a "ringing" sensation in his head, which also resulted in a temporary loss of hearing due to the sustained helmet-to-helmet collision.

77.  After a short departure and conversation with the Head Athletic Director of Broward County, Plaintiff regained his composure, and continued to play for close to the remainder of the game.

78.  Plaintiff was not aware that he had sustained another significant head injury and before game end could go no further and hobbled off of the field of play.

79.  Plaintiff Jackson was not evaluated did Defendants Scott, Sidwell, John Doe# 1, John Doe # 3, FHSAA, and/or Defendant School Board Of Broward County, teams trainer(s), or any member(s) of the coaching staff, beyond receiving gator aide and a pep talk by a them despite the fact that this injury occurred in the open view of the coach(es) and the ESPN2 home audiences.

80.  Despite Defendants Scott, Sidwell, John Doe# 1, John Doe # 3 knowledge of Plaintiff's disoriented and confused state, and after witnessing multiple significant helmet-to-helmet collision in this game opener, the Defendants allowed Plaintiff to remain in the game, in complete deliberate indifference to the health, safety and welfare of the Plaintiff.

81.  This unwillingness to remove and/or sit on injured player was a practice, custom or policy maintained by the aforesaid Defendants while at Plaintiffs career at Dillard High School.

82.  In fear for Plaintiff's health, safety and welfare, a ESPN2 reporter approached Defendant Scott during the course of the game and inquired of him on Plaintiff's apparent and visibly injured condition. In response, Defendant Sidwell was reported to have said my linebackers are relentless and did nothing further in checking on Plaintiffs condition.

83.   This deliberate indifference to alerts and/or communications between he and his players regarding their health and the health of their teammate was a practice, custom or policy maintained by Defendants Scott and Sidwell.

84.   Moreover, despite Plaintiff exhibiting clear symptoms of a traumatic head injury, neither Defendant Scott or Defendant Sidwell assess the Plaintiff as both these Defendants did neglect to perform any type of cognitive or baseline testing.

85.   In fact, Defendant Scott and Defendant Sidwell both did nothing, as was proofing where the Plaintiff was forced to reenter the game and played nearly until the games end voluntarily removing himself from the field of play due to the severity of sustained injury mentioned above.

86.   For the on set of the reported helmet-to-helmet collisions in this game, until nearly the end of the regulation times period Plaintiff maintained his full responsibilities on defense, and special teams visibly injured to the best of his abilities.

87.   Upon the filling of the instant Complaint, Plaintiff continues to suffer from serious and potentially permanent effects of this closed head injury.

88.   In fact, for well Plaintiff's health has continued to deteriorate, and he has need for medical treatment from in an attempt to alleviate the symptoms of the traumatic head injuries which was caused by the aforesaid acts of the Defendants.

89.   At all times relevant hereto, Defendants FHSAA, and School Board Of Broward County acted independently, and by and through its authorized agents, servants, and employees, including, but not limited to, Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, Jane Doe.

90.   At all times relevant hereto, Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, Jane Doe were acting within the course and scope of their employment.

91.   As a direct and proximate result of the aforesaid Defendant's conduct as set forth above, Plaintiff Jackson was injured, and he has and will continue to experience conscious pain, suffering and loss of enjoyment of life in the extreme.

92.   As a result of the previously described conduct of these Defendants, the Plaintiff, seeks damages for the following injuries:

   a. Serious brain injuries
   b. Increased aggression
   c. Significant cognitive deficiencies
   d. Frequent loss of balance
   e. Post traumatic amnesia
   f. Short-term memory deficiencies
   g. Increased anxiety
   h. Emotional instability
   i. Depression
   j. Behavioral instability
   k. Periodic insomnia
   l. Periodic hypersomnia
   m. Consistent vomiting associated with nausea
   n. Fatigue
   o. Blurred vision
   p. Debilitating headaches
   q. Dizziness
   r. Sudden fever and sweats, and
   s. A resulting impairment of earning capacity

93.   All of the aforesaid injuries may be of a permanent nature; and, therefore, Plaintiff may suffer from residual problems for the remainder of his lifetime.

94.   A claim for such damages is being made in the instant Civil Rights Action.

95.   Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, Jane Doe, Defendant FHSAA, Defendant School Board Of Broward County, as well as its employees and agents, had duty to ensure that all coaches and/or teachers and/or administrators educating and/or advising within the school district were competent, ethical and acting in the best interests of its student athletes and students.

96.   All of the above-named Defendants and their agents and employees, owed a duty to protect student athletes and students such as Plaintiff Maurice J. Jackson, against the hazards he encountered and the harm he suffered while attending in performance as a student athlete at Nova, Plantation and Dillard High Schools.

97.   Plaintiff re-alleges and incorporates by reference paragraphs [16 thru 95]

## CAUSES OF ACTION

### COUNT I

**PLAINTIFF V. DEFENDANTS WALKER, HEPLER, SCOTT, SIDWELL, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3 JOHN DOE #4, JOHN DOE#5, AND JANE DOE**

**VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITION UNDER AMENDMENT FOURTEEN – DUE PROCESS CLAUSE FOR INJURY TO HUMAN DIGNITY ENFORCEABLE VIA 42 U.S.C. § 1983**

98.    The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

99.    The actions Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, John Doe #5, & Jane Doe, detailed above violated Plaintiff's rights under the United States Constitution.

100.    More specifically, at all times relevant hereto, Plaintiff possessed substantive and procedural due process rights including, but not limited to, a liberty interests in his dignity as a human being.

101.    It was not objectively reasonable for these Defendants to ignore Plaintiff's serious and traumatic brain injuries and allow the Plaintiff to remain in the game and continue to sustain significant blows to the head when it was clearly hazardous to his health, safety and welfare.

102.    In fact, these Defendant's actions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety, and welfare.

103.    Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, John Doe #5, & Jane Doe intentionally disregarded Plaintiff's obvious incoherent and vulnerable state, and then deprived Plaintiff of his constitutional rights as detailed above which has caused prolonged and potentially permanent injury, pain and suffering.

104.    Each of the above-named Defendants were acting in their capacity as teacher(s), coach(es), athletic director(s), and/or principal(s) at Plantation High School and Dillard High School which are both members of Defendant FHSAA, in the Defendant School Board Of Broward County, and therefore acting under the color of state law. Their

actions and inaction which caused the Plaintiff's Constitutional deprivations are enforceable pursuant to 42 U.S.C. § 1983.

105.   Each of the above-named Defendants were deliberately indifferent to the Plaintiff, due to the fact that they knew that Maurice J. Jackson faced a substantial risk of serious harm and they failed to take reasonable steps to avoid the harm.

106.   Each of the above-named Defendants are directly responsible for this constitution violation. Upon information and belief, the aforesaid Defendants, through either express policy or the inactions of their policy makers, had a policy and/or practice of reckless indifference to the rights, health and safety of student athletes including, but not limited to, the Plaintiff.

107.   This adopted practice, custom or policy is demonstrated by the fact that Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play where he sustained subsequent hits to the head, only aggravating these injuries.

108.   As a direct and proximate result of the Defendant's unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

109.   Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Maurice J. Jackson demands compensatory and consequential damages from the Defendants in excess of Two Hundred - Fifty Thousand Dollars ($250,000.00), plus interest, cost of suit and attorney's fees.

## COUNT II

**PLAINTIFF V. DEFENDANTS WALKER, HEPLER, SCOTT, SIDWELL, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3 JOHN DOE #4, JOHN DOE#5, & JANE DOE**

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY TO BODILY INTEGRITY ENFORCEABLE VIA 42 U.S.C. § 1983

110.   The averments set forth in the preceding paragraphs are incorporated by reference thereto.

111.   The actions of Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, John Doe #5, & Jane Doe detailed above violated Plaintiff's rights under the United States Constitution.

112. More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural due process rights including, but not limited to, a liberty interests in his bodily integrity.

113. It was not objectively reasonable for these Defendants to ignore Plaintiff's serious and traumatic brain injuries and allow the Plaintiff to remain in the game and continue to sustain significant blows to the head, thereby depriving him of his Constitutional rights as detailed above.

114. The Defendant's actions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety and welfare.

115. Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, John Doe #5, & Jane Doe intentionally disregarded Plaintiff's obvious incoherent and vulnerable state and then deprived Plaintiff of his constitutional rights as detailed above which has caused prolonged and potentially permanent injury, pain and suffering.

116. At all pertinent hereto, each of the above-named Defendants were acting in their capacity as principal(s), athletic director(s), coach(es), and/or teacher(s) at Plantation and Dillard High Schools, which are employed by Defendant School Board Of Broward County and a member of Defendant FHSAA, and therefore acting under the color of state law. Their actions and inactions which caused Plaintiff's Constitutional deprivations are enforceable pursuant to 42 U.S.C. § 1983.

117. Each of the above-named Defendants were deliberately indifferent to the Plaintiff, in that they knew that Maurice J. Jackson faced a substantial risk of serious harm and they failed to take reasonable steps to avoid the harm.

118. Each of the above-named Defendants are directly responsible for this constitutional violation. Upon information and belief the aforesaid Defendants, through either express policy or the inactions of their policy makers had a policy and/or practice of reckless indifference to the rights, health, and safety of student athletes including, but not limited to, the Plaintiff.

119. This adopted practice, custom or policy is demonstrated by the fact that Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play and was denied his right to receive adequate emergency and medical treatment.

120. As a direct and proximate result of the Defendants unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

121. Some of these severe and grievous injuries are potentially permanent in nature.

    WHEREFORE, the Plaintiff, Maurice J. Jackson demands compensatory and consequential damages from the Defendants in excess of Two Hundred Fifty Thousand Dollars (250,000.00) plus interest, cost of suit and attorneys' fees.

## COUNT III

### PLAINTIFF V. DEFENDANTS WALKER, HEPLER, SCOTT, SIDWELL, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3 JOHN DOE #4, JOHN DOE #5, & JANE DOE

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY AS A RESULT OF A STATE CREATED DANGER/ SPECIAL RELATIONSHIP ENFORCEABLE VIA 42 U.S.C. § 1983

122. The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

123. The actions of Defendants Walker, Hepler, John Doe #1, John Doe #2, John Doe #3 John Doe #4, John Doe #5, & Jane Doe detailed above violated Plaintiff's rights under the United States Constitution.

124. More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural due process rights to be free from state occasioned and/or created dangers which caused harm to his body integrity and human dignity, and which are protected by the United States Constitution.

125. It was not objectively reasonable for these Defendants to ignore Plaintiff's serious and traumatic brain injuries and allow the Plaintiff to remain in the game and continue to sustain significant blows to the head, when it was clearly foreseeable that by doing so, the Plaintiff faced a substantial risk of serious harm, and they failed to take reasonable steps to avoid the harm.

126. Such action and/or inaction exhibited by All of the above named Defendants would shock the conscious of a reasonable person under like circumstances.

127. Moreover, it was evident that by allowing the Plaintiff to remain in the game, the Plaintiff was a foreseeable victim of said Defendant's actions and/or inactions.

128. Plaintiff Jackson was an obvious member of a class subjected to the harm brought about by the State's actions and/or inactions.

129. By way of Defendants actions and/or inactions; said Defendants utilized their position of authority and power to create a danger to the Plaintiff, and/or placed Plaintiff in a more vulnerable manner to the known risk of harm.

130. The Defendants' actions and/or inactions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety, and welfare.

131. This adopted practice, custom or policy is demonstrated by the fact Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play and was placed in a position of danger by State occasioned or created harm.

132. As a direct and proximate result of the Defendants unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

133. Some of these severe and grievous injuries are potentially permanent in nature.


WHEREFORE, the Plaintiff, Maurice J. Jackson demands compensatory and consequential damages from the Defendants in excess of Two Hundred - Fifty Thousand Dollars (250,000.00) plus interest, cost of suit and attorneys' fees.

## COUNT IV

**PLAINTIFF V. DEFENDANTS WALKER, HEPLER, SCOTT, SIDWELL, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3 JOHN DOE #4, JOHN DOE #5, & JANE DOE**

### VIOLATIONS OF THE CONSTITUTION OF THE STATE OF FLORIDA FOR INJURY TO BODY INTEGRITY

134. The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

135. The actions of Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, John Doe #5, & Jane Doe detailed above violated Plaintiff's rights under the Constitution of the State of Florida.

136. As a result of aforementioned actions and/or inactions of Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, John Doe #5,

Plaintiff Jackson was deprived of his rights to bodily integrity guaranteed to him by the Constitution of the State of Florida.

137. The Defendants' actions and/or inactions demonstrated an adopted practice, custom or policy in deli berate indifference to Plaintiff's overall health, safety and welfare.

138. This adopted practice, custom or policy constituted a violation of the rights and privileges afforded to the Plaintiff by the Constitution of the State of Florida.

139. As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

140. Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Maurice J. Jackson demands compensatory and consequential damages from the Defendants in excess of Two Hundred - Fifty Thousand Dollars (250,000.00) plus interest, cost of suit and attorneys' fees.

### COUNT V

## PLAINTIFF V. DEFENDANTS SCHOOL BOARD OF BROWARD COUNTY AND FHSAA

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY TO HUMAN DIGNITY ENFORCEABLE VIA 42 U.S.C. § 1983

141. The averments set fourth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

142. The actions of Defendant School Board of Broward County and Defendant FSHAA detailed above violated Plaintiff's rights under the United States Constitution.

143. More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural rights including, but not limited to, a liberty interest in his bodily integrity.

144. The above-named Defendants were acting by and through its agents, employees and servants, and at all times pertinent hereto, said agents, employees, and servants were acting within their official capacity as teachers, counselors, and/or administrators in the School Board Of Broward County and in the FHSAA, and therefore acting under the color of state law. Their actions and inactions in depriving Plaintiff of his Constitutional rights are subject to enforcement via 42 U.S.C. § 1983.

145.   The Defendant`s actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff`s overall health, safety and welfare.

146.   As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

147.   Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Maurice J. Jackson demands compensatory and consequential damages from the Defendants in excess of Two Hundred - Fifty Thousand Dollars (250,000.00) plus interest, cost of suit and attorneys' fees.

## COUNT VI

**PLAINTIFF V. DEFENDANTS SCHOOL BOARD OF BROWARD COUNTY AND FHSAA**

**VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE <u>FOR INJURY TO BODILY INTERGRITY ENFORCEABLE VIA 42 U.S.C. § 1983</u>**

148.   The averments set fourth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

149.   The actions of Defendants School Board of Broward County and FHSAA detailed above violated Plaintiff`s rights under the United States Constitution.

150.   More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural rights including, but not limited to, a liberty interest in his bodily integrity.

151.   The above-named Defendants were acting by and through its agents, employees and servants, and at all times pertinent hereto, said agents, employees, and servants were acting within their official capacity as teachers, counselors, and/or administrators in the School Board Of Broward County, and the FHSAA, and therefore acting under the color of state law. Their actions and inactions in depriving Plaintiff of his Constitutional rights are subject to enforcement via 42 U.S.C. § 1983.

152.   The Defendant`s actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff`s overall health, safety and welfare.

153.   As a direct and proximate result of the Defendants unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

154. Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Maurice J. Jackson demands compensatory and consequential damages from the Defendants in excess of Two Hundred - Fifty Thousand Dollars (250,000.00) plus interest, cost of suit and attorneys' fees.

## COUNT VII

### PLAINTIFF V. DEFENDANTS SCHOOL BOARD OF BROWARD COUNTY AND FHSAA

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY TO AS A RESULT OF A STATE CREATED DANGER/ SPECIAL RELATIONSHIP ENFORCEABLE VIA 42 U.S.C. § 1983

155. The averments set fourth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

156. The actions of Defendants School Board of Broward County and FHSAA detailed above violated Plaintiff's rights under the United States Constitution.

157. Plaintiff Jackson possessed a substantive and procedural due process right to be free from State occasioned and/or created harm to his bodily integrity and human dignity which was protected by the United States Constitution.

158. Such actions and/or inactions exhibited by these Defendants would shock the conscience of a reasonable person under like circumstances.

159. Plaintiff Jackson was an obvious member of a class subjected to the harm brought about by the State's actions and/or inactions.

160. By way of the Defendants action and/or inactions said Defendants utilized its position of authority and power to create a danger to the Plaintiff, and/or placed Plaintiff in a more vulnerable manner to the known risk of harm.

161. The Defendant's actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff's overall health, safety and welfare.

162. This adopted practice, custom, or policy is demonstrated by the fact that Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play and was placed in a position of danger by State occasioned or created harm.

163. As a direct and proximate result of the Defendants unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

164. Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Maurice J. Jackson demands compensatory and consequential damages from the Defendants in excess of Two Hundred-Fifty Thousand Dollars (250,000.00) plus interest, cost of suit and attorneys' fees.

## PUNITIVE DAMAGES

165. The actions of all of the named Defendants detailed herein are outrageous, in that, with timely and proper interventions by said Defendants, the severe and potentially permanent brain injuries sustained by the Plaintiff could have been avoided. It is evident that these Defendants acted with deliberate indifference and in a conscience shocking manner at all relevant times. Consequently, an award of punitive damages is necessary to punish these Defendants, as well as to inform them that the requirements of the United States Constitution and the Constitution of the State of Florida also applies to them.

166. The Plaintiff cannot, nor does he, seek an award of punitive damages against Defendants Plantation and Dillard High School.

## DEMAND FOR TRIAL BY JURY

167. The Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request that this Honorable Court grant from the following relief:

168. A judgment against all Defendants, jointly and severally, awarding Compensatory Damages to the Plaintiff in an amount to be determined by a jury and/or the Court.

169. A judgment against Defendants Walker, Hepler, Scott, Sidwell, John Doe #1, John Doe #2, John Doe #3 John Doe #4, John Doe #5, & Jane Doe awarding Punitive Damages to the Plaintiff in an amount to be determined by a jury and/or the Court.

170. A monetary award for attorney's fees and the cost's of this action, pursuant to 42 U.S.C.U.S.C. § 1988.

171. Any other relief that this Court finds to be just, proper and equitable.

_12/13/20_                              /s/ _____
   DATE                                Maurice J. Jackson #L61055

**DECLARATION**

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746(2) that the facts stated in this complaint is true and correct.

_12/13/20_                              /s/ _____
   DATE                                Maurice J. Jackson #L61055

23

Maurice Jackson #161055
DeSoto CI, Annex
13617 S.E. Hwy 70
Arcadia, FL 34266-7800

United States District Court
Southern District — Florida

400 N. Miami Ave., 8TH FL
Miami, FL. 33128

PROVIDED TO DESOTO C.I.
12-13-20 FOR MAILING
INMATE INITIALS
OFFICER INITIALS